**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTPORT INSURANCE CORPORATION** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-1372 |
| | : | |
| **FRANK M. MCCLELLAN,** *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                              **July 31, 2020**

     We today address the coverage obligation of a legal malpractice insurer who offered a lawyer an option of an extended reporting period after the lawyer ceased practicing, but then defended a malpractice case against him for years without specifically identifying the possibly known grounds based on a pending malpractice case for declining coverage. The underlying client later brought a second case seeking disgorgement of his legal fees. The insurer then specifically reserved rights to decline coverage for the disgorgement action and, after the state court judge ordered disgorgement, declines to indemnify the lawyer for the disgorgement judgment on appeal. The insurer today seeks a declaratory judgment on the limited pleadings confirming it owes no obligation to defend or indemnify the lawyer on both the ongoing malpractice case and the disgorgement judgment and appeal costs. The lawyer and the client counterclaim alleging estoppel and bad faith. We find ambiguity in the insurance policy concerning how the lawyer's "option" to report a post-practice claim affects the insurer's obligations in both cases, and there are facts ripe for discovery on whether we can estop the insurer from withdrawing defense or denying indemnity to the lawyer. We also find judgment is warranted dismissing the client's bad faith claims and the lawyer's bad faith claim relating to the ongoing defense of the malpractice case.

I.     **Background based on submitted and authentic records.**[1]

Legal malpractice insurer Westport Insurance Corporation began insuring Philadelphia lawyer Frank M. McClellan in 2007 agreeing to pay for his defense and indemnify him for judgments arising out of defined losses caused by his legal malpractice.[2] Five years later, Westport issued Attorney McClellan a Lawyers Professional Liability Policy (the "Policy") for claims accruing during a policy period of November 9, 2012 to November 9, 2013.[3]

Westport and Attorney McClellan agreed Westport would pay "all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD[.]"[4] The parties defined the term "LOSS" as "the monetary and compensatory portion of any judgment, award or settlement."[5] The parties agreed "LOSS shall not include":

1. civil or criminal fines, penalties, fees or sanctions;
2. matters deemed uninsurable by operation of law;
3. punitive or exemplary damages;
4. the multiplied portion of any multiple damages;
5. the return by any INSURED of any fees or remuneration paid to any INSURED; or
6. any form of non-monetary relief.[6]

Westport and Attorney McClellan agreed Attorney McClellan would report any claim within the policy period or within the sixty days following the policy period (ending January 8, 2014) unless Attorney McClellan elected an extended reporting period.[7] Westport and Attorney McClellan agreed Attorney McClellan could extend the time required to report claims to Westport under two different options.[8] If Westport cancelled the Policy or Attorney McClellan decided not to renew the Policy, the parties agreed Attorney McClellan had the right, if he met certain conditions, to extend the time for reporting claims by paying an additional premium.[9]

At issue today is the second option, called a "Non-Practicing Extended Reporting Period,"

allowing Attorney McClellan to extend his required reporting for an "unlimited" time period if he "permanently and completely" ceased the private practice of law during the policy period.[10] The parties agreed the "Non-Practicing Extended Reporting Period option is provided until the [Attorney McClellan] resumes the private practice of law."[11] Attorney McClellan exercised the option under the "Non-Practicing Extended Reporting Period" and Westport issued him an endorsement effective November 19, 2013 documenting Attorney McClellan's ability to report claims for an "unlimited" time period.[12]

Before the Policy period ended, Attorney McClellan referred Ms. Cindy Johnson to an attorney who brought a medical malpractice case on behalf of her husband's estate, and Attorney McClellan received a $52,145.42 referral fee from Ms. Johnson's lawyer.[13] In November 2017, Ms. Johnson sued Attorney McClellan, the lawyer who paid Attorney McClellan a referral fee, and others for legal malpractice in New Jersey state court ("2017 Legal Malpractice Action").[14]

Shortly after Ms. Johnson filed this 2017 Legal Malpractice Action, it appears Westport tendered a defense to Attorney McClellan.[15] Ms. Johnson moved for summary judgment in November 2018, asking, in part, for the court to order Attorney McClellan to disgorge the $52,145.42 referral fee.[16] A month later, Westport issued Attorney McClellan a letter purporting to reserve its rights against covering the disgorgement of the referral fee.[17] The New Jersey state court denied Ms. Johnson's summary judgment motion and directed her to refile a separate disgorgement action.[18]

Consistent with the New Jersey judge's direction, Ms. Johnson filed a separate civil action in March 2019 asking the court to order Attorney McClellan to disgorge his referral fee ("2019 Fee Action").[19] Westport tendered a defense to Attorney McClellan in the 2019 Fee Action but reserved its rights to deny coverage for damages falling outside the covered definition of "Loss"

in April 2019.[20]

On January 3, 2020, the New Jersey state court entered judgment in the 2019 Fee Action in favor of Ms. Johnson and ordered Attorney McClellan to disgorge the $52,145.41 referral fee and pay $156,436.23 in treble damages for violating New Jersey law governing the unauthorized practice of law.[21]  A few weeks after the ruling, Westport sent a letter to Attorney McClellan saying it would not provide coverage for the January 3, 2020 judgment, stating the ordered damages (1) did not fall within the covered definition of "Loss," and (2) for the first time, advising Attorney McClellan he had no coverage under the Policy because the Non-Practicing Extended Reporting Period option "is provided until [Attorney McClellan] resumes the private practice of law."[22]

**II.     Analysis**[23]

A little over two months later, Westport sued Attorney McClellan and Ms. Johnson before us asking for a declaratory judgment it (1) has no duty to defend or indemnify Attorney McClellan for any claim asserted against him by Ms. Johnson in either a 2017 Legal Malpractice Action or a 2019 Fee Action filed in New Jersey state court; and, (2) has no duty to indemnify Attorney McClellan for the judgment entered against him in a January 3, 2020 Order in New Jersey state court.[24]  Attorney McClellan and Ms. Johnson separately raise counterclaims for estoppel/waiver and bad faith.[25]

Westport now moves for judgment on the pleadings as to both its complaint and the counterclaims.  Westport argues undisputed facts in the record allow us to enter judgment in its favor before the parties engage in discovery.  We agree in part. We disagree as to Westport's claims for declaratory relief as fact questions prevent us from entering judgment in its favor as a matter of law on the current record.  But we agree we may enter judgment dismissing Ms.

Johnson's bad faith counterclaims and Attorney McClellan's bad faith counterclaim based on the 2017 Legal Malpractice Action.[26]

### A. We cannot enter judgment based on the pleadings as to Westport's request for declaratory relief.

Westport seeks two separate declarations: one relating to the 2017 Legal Malpractice Action and another relating to the 2019 Fee Action. We find fact questions exist as to both precluding judgment on the pleadings.

First, we cannot declare Westport's rights regarding the 2017 Legal Malpractice Action. The parties adduce sparse facts in the record concerning the status or claims asserted in this underlying case. For example, we are not aware of its status or the specific allegations raised against Attorney McClellan. Westport acknowledges the record is rather bare—but says we can still enter judgment because the undisputed facts establish Attorney McClellan resumed the private practice of law and therefore Attorney McClellan's coverage under the Policy ceased to exist.

This argument turns on two ideas: (1) the Policy language; and, (2) the doctrine of estoppel. Neither convinces us judgment can be entered today. The Policy provides: "This Non-Practicing Extended Reporting Period *option* is provided until [Attorney McClellan] resumes the private practice of law."[27]  We interpret contractual language consistent with its plain meaning.[28] Westport would like us to read this language as saying the Policy terminates and all coverage ceases if Attorney McClellan resumes the private practice of law. But we do not think this is the unambiguous reading of this clause. In offering its reading, Westport glosses over the significance of the word "option." Does this mean an "option" to exercise the right to elect an extended reporting period or an "option" to receive coverage once reported? We find it unclear. The present record shows Attorney McClellan exercised the "option" to report claims for an "unlimited" duration under this provision of the contract. Westport acknowledged Attorney McClellan's

5

decision by issuing him an endorsement.[29] If Attorney McClellan did not exercise this "option" to report claims for an "unlimited" period, he clearly would lack coverage. But he did exercise the option. We find this provision ambiguous as to whether, by practicing law, Attorney McClellan lost the ability to report claims.

Even if we read the provision in Westport's favor, Westport fails to convince us why the doctrine of estoppel could not apply to it denying coverage under this provision. Westport relies on the idea estoppel cannot create coverage when none exists. But this general statement oversimplifies our issue. Our undisputed record shows Attorney McClellan potentially maintained an ability to report claims under the Non-Practicing Extended Reporting Period for claims accruing during a covered policy period. Attorney McClellan reported a claim under the under the Non-Practicing Extended Reporting Period after being sued by Ms. Johnson, and Westport accepted the claim and tendered him a defense. Westport continued providing this defense for almost three years before raising an issue with the Non-Practicing Extended Reporting Period. Westport relies on *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*,[30] but even there our Court of Appeals observed the insurer "unequivocally communicated its intention to reserve its rights[.]"[31] Our record does not, at the present, show Westport timely and unequivocally reserved its rights.[32] As the doctrine of estoppel may apply, we must allow discovery to develop, at least, when and what Westport knew about Attorney McClellan resuming the private practice of law.

Second, we cannot declare Westport's rights regarding the 2019 Fee Action. For this claim, in addition to asserting its already addressed Non-Practicing Extended Reporting Period theory, Westport relies on the Policy language relating to a covered "Loss." There is little question the definition of "Loss" excludes the ordered damages in the January 2020 Order in the 2019 Fee Action. Attorney McClellan concedes this. But Attorney McClellan argues his estoppel defense

and counterclaim prevent us from entering judgment on this limited record as to this claim. We agree.

We must consider the full context of the record when considering Attorney McClellan's estoppel theory. Ms. Johnson sued Attorney McClellan for legal malpractice in state court in November 2017. The parties do not attach this complaint to our record but agree Ms. Johnson did not specifically assert disgorgement until a November 2018 motion for summary judgment. Westport reserved its rights specifically citing the "Loss" provision in December 2018. As the Pennsylvania Superior Court confirmed three months ago, Westport's reservation to be effective must: "(1) be submitted in a timely fashion; and (2) "fairly inform the insured of the insurer's position" in order to preserve an insurer's assertion of policy exclusions once a defense of the insured has been mounted."[33]

We find whether the December 2018 reservation is "timely" is an unsettled question of fact. While the underlying state court complaint did not specifically assert a disgorgement claim, there is a fact question as to the sufficiency of Westport's investigation and whether it should have advised its insured of this exclusion earlier than December 2018.[34]

**B.  Westport is entitled to judgment as to the Defendant Johnson's bad faith counterclaim and Attorney McClellan's bad faith counterclaim relating to the 2017 Legal Malpractice Action.**

Westport also moves for judgment as to the Defendants' counterclaims. Both Ms. Johnson and Attorney McClellan assert counterclaims for estoppel/waiver and bad faith. Finding the estoppel/waiver claims are viable, we solely turn to whether either Defendant may proceed in their bad faith claim against Westport.

We enter judgment as to Ms. Johnson's counterclaim for bad faith. Ms. Johnson did not assert an independent basis for this claim.[35] She did not file her own argument after Westport

7

moved for judgment as to this claim.[36] To establish standing to proceed on a claim for bad faith, Ms. Johnson needs to establish she is a party to the contract or at least a third-party beneficiary identified in the contract.[37] Ms. Johnson does not explain her particular standing to raise a claim for bad faith; we see no basis to find she is a party or third-party beneficiary to the contract. Without this basis, her claim fails.

Westport also moves for judgment on the pleadings on Attorney McClellan's bad faith counterclaim. Courts in Pennsylvania and our Circuit have consistently held that "[a] plaintiff bringing a claim under § 8371 must demonstrate that an insurer has acted in bad faith toward the insured through any frivolous or unfounded refusal to *pay proceeds of a policy.*"[38] Westport argues Attorney McClellan's counterclaim for bad faith fails because (1) he lacks standing to sue for bad faith for the 2017 Legal Malpractice Action because there has been no refusal to pay policy proceeds; and, (2) he cannot proceed for bad faith for the 2019 Fee Action because there is no coverage, i.e. Westport's refusal is justified.

We agree with Westport as to the 2017 Legal Malpractice Action. The parties agree there has been no judgment or order entered against Attorney McClellan in the 2017 Legal Malpractice Action. There are also no allegations of a concrete settlement offer. Without these facts, Westport has not refused to pay the proceeds of the Policy. Attorney McClellan argues Westport's conduct has reduced the amount of his policy limits. But this is still is not a refusal to pay proceeds of a policy. Without a refusal, the claim is not ripe. The 2019 Fee Action is different. In the 2019 Fee Action, the court entered judgment against Attorney McClellan. Westport refuses to pay the proceeds of the policy. While it may proceed in this case to show its refusal is justified, it is not presently entitled to judgment as a matter of law.[39]

### III.  Conclusion

We grant in part and deny in part Westport's Motion for judgment on the pleadings.

---

[1] Rule 12(c) states: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(d) states: "If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Merely attaching documents to a Rule 12(c) motion . . . does not convert it to a motion under Rule 56." *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 835 (3d Cir. 2003). When deciding an unconverted Rule 12(c) motion for judgment on the pleadings, we can consider the pleadings and attached exhibits, "matters of public record and 'undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents.'" *Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 545, 545 (E.D. Pa. 2020) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

The party's claims must depend on the attached documents in question so the other party is "on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993). And a document is undisputedly authentic where neither party questions its authenticity. *See, e.g.*, *Citisteel*, 78 F. App'x at 835 ("Neither side has questioned the authenticity of any document attached to GE's motion or CitiSteel's response. Indeed, most of those documents are critical to CitiSteel's claim for damages."); *Cunningham v. Burlington Coat Factory Warehouse Corp.,* No. 18-11266, 2019 WL 4786016, at *4 (D.N.J. Sept. 30, 2019) ("Plaintiff's claims are contingent on the EEOC Notice and EEOC Charge. Plaintiff does not dispute the authenticity of these documents. Moreover, they are referenced in the Amended Complaint.").

Westport attaches documents to its Complaint. ECF Doc. No. 1. Westport also attaches two reservation of rights letters to its Motion for judgment on the pleadings. ECF Doc. No. 38. Although the reservation of rights letters are not attached to the pleadings, we may consider these documents as Westport's claims are based on the documents and the rights asserted in the documents and Attorney McClellan confirmed during oral argument he does not contest the authenticity of the documents. ECF Doc. No. 40 at 8. This conclusion is a separate concern than raised in our July 27, 2020 Order. ECF Doc. No. 45. We are separately reviewing whether to order the Plaintiff to file unredacted exhibits.

[2] ECF Doc. No. 1 at 20. Westport also insured Attorney McClellan's individual law firm, the Law Office of Frank M. McClellan. *Id.*

[3] *Id.* at 20.

[4] *Id.* at 23.

[5] *Id.* at 26.

[6] *Id.*

[7] *Id.* at 23, 32-36.

[8] *Id.* at 32-35

[9] *Id.* at 33-34.

[10] *Id.* at 34.

[11] *Id.*

[12] *Id.* at 43.

[13] *Id.* at 51.

[14] *Id.*

[15] *Id.* at ¶ 13; ECF Doc. No. 21 ¶ 13.

[16] ECF Doc. No. 1 at 51.

[17] ECF Doc. No. 38-4.

[18] ECF Doc. No. 1 at 51.

[19] *Id.*

[20] ECF Doc. No. 38-5.

[21] ECF Doc. No. 1 at ¶ 8; ECF Doc. No. 21 at ¶ 8.

[22] ECF Doc. No. 1, Ex. 2.

[23] A party may move for judgment "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In so doing, "the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law." *Collinson v. City of Philadelphia,* No. 12-6114, 2015 WL 221070, at *1 (E.D. Pa. Jan. 14, 2015) (quoting *S.B. v. United of Omaha Life Ins. Co.*, No. 13–1463, 2013 WL 2915973, at *3 (E.D. Pa. June 13, 2013)). The standard applied to motions under Rule 12(c) is the same standard as applied to motions to dismiss under Rule 12(b)(6). *Szczurek v. Prof'l Mgmt., Inc.,* No. 14-4790, 2014 WL 6388484, at *1 (E.D. Pa. Nov. 17, 2014). A Rule 12(c) motion "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

[24] ECF Doc. No. 1.

[25] ECF Doc. Nos. 21, 22.

[26] We apply Pennsylvania law to this dispute. Pennsylvania has a stronger interest in issues involving the Policy. Westport issued this Policy to a Pennsylvania resident licensed to practice law in Pennsylvania. The parties understood the insurance policy to apply to Attorney McClellan's practice of law in Pennsylvania. Attorney McClellan's relationship with Ms. Johnson was first established in Pennsylvania. And more importantly, the parties come before us primarily to ask us to interpret the rights and obligations created by a Pennsylvania contract. There are obvious contacts between today's dispute and New Jersey, as Ms. Johnson's suits are being resolved there. But Westport brings this case because of potential obligations to defend and indemnify a Pennsylvania lawyer it insured under a Pennsylvania contract. Pennsylvania's interests predominate.

[27] ECF Doc. No. 1 at 34 (emphasis added).

[28] *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745-46 (3d Cir. 1999). The goal of contract interpretation is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Kane v. State Farm Fire and Casualty Co.*, 841 A.2d 1038, 1042 (Pa. Super. 2003); *see also Continental Casualty Co. v. Pro Machine*, 916 A.2d 1111, 1118 (Pa. Super. 2007) (describing interpretation as a question of law and explaining that "[t]he polestar of our inquiry is the language of the insurance policy."); *accord J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). We must read the policy as a whole and discern the policy's intent "from consideration of the entire instrument." *401 Fourth Street, Inc. v. Investors Ins. Group* 879 A.2d 166 (Pa. 2005); *see also Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016) ("Courts must interpret an insurance policy as one, harmonious document and resolve ambiguities in favor of coverage."). If the language of the policy is clear, we give effect to the language's plain meaning. *401 Fourth Street, Inc. v. Investors Ins. Group* 879 A.2d 166 (Pa. 2005); *see also Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 677 (3d Cir. 2016) ("Courts must interpret an insurance policy as one, harmonious document and resolve ambiguities in favor of coverage."). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986); *see also DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1143 (Pa. Super. 1987) (explaining that ambiguous terms are subject to "more than one interpretation when applied to a particular set of facts"). When contractual language is ambiguous, the terms are "construed in favor of the insured." *Gene & Harvey Builders, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986) (citation omitted).

[29] ECF Doc. No. 1 at 43.

[30] 107 F. App'x 266, 268 (3d Cir. 2004).

[31] *Id.*

[32] *Cf. Selective Way Ins. Co. v. MAK Services, Inc,* --- A.3d ----, 2020 WL 1973964 (Pa. Super. Apr. 23, 2020) ("As a consequence of this deficient investigation, Selective Way's reservation of rights letter failed to 'clearly communicate' the extent of the rights being reserved, which resulted

in presumptive prejudice to MAK Services.").

[33] *Id.* at *4.

[34] Under Rule 12(c), we must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Shimmel by Shimmel v. Navistar Int'l Corp.*, 440 F. Supp. 3d 438, 443–44 (W.D. Pa. 2020) (quoting *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011)). Westport asks us to conclude a claim for disgorgement could not have been fairly understood to be pursued by Ms. Johnson until November 2018, but it does not attach the 2017 Legal Malpractice complaint to the pleadings here. Without having the benefit of reviewing the complaint, we cannot infer the complaint could not have fairly alerted Westport to a potential disgorgement claim given its duty to conduct a "thorough investigation" before tendering a defense to its insured. *Selective Way*, 2020 WL 1973964, at *5.

[35] ECF Doc. No. 22.

[36] ECF Doc. No. 42.

[37] *Weiser v. Great Am. Ins. Co.*, No. 19-1218, 2020 WL 1853572, at *5 (E.D. Pa. Apr. 13, 2020).

[38] *Buck v. GEICO Advantage Ins. Co*., No. 18-5148, 2019 WL 318262, at *2 (E.D. Pa. Jan. 24, 2019) (citations and internal quotations omitted).

[39] In its Reply, Westport notes when arguing it is entitled to judgment on Attorney McClellan's bad faith claim it "continues to provide a defense in the underlying action." ECF Doc. No. 43 at 7. To the extent Westport seeks judgment as to a theory of bad faith based on a failure to provide a defense, we do not read Attorney McClellan's counterclaim as raising such a theory. *See* ECF Doc. No. 21 at ¶¶ 26-29.