**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTPORT INSURANCE** | : | **CIVIL ACTION** |
| **CORPORATION** | : | |
| | : | |
| **v.** | : | **NO.  20-1372** |
| | : | |
| **FRANK M. MCCLELLAN,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **October 8, 2020**

An attorney and insurer agreeing to the conditions under which the insurer must tender a defense and indemnify an insured attorney for a timely reported malpractice claim justifiably rely upon the terms of an insurance policy.  An insurer tendering a defense to an attorney facing a legal malpractice claim and not reserving rights for years cannot later change its mind.  We must estop the insurer from denying a defense or indemnity when it allowed the insured attorney to proceed in justifiable reliance on coverage for years.  But if the insurer timely reserves rights and later denies coverage on a new case for fee disgorgement which is unambiguously outside the parties' agreed terms of coverage, we cannot find the insured attorney justifiably relied on coverage for the newly plead disgorgement case.  Following review of an extended record addressing a 2017 legal malpractice case and subsequent defense and a 2019 disgorgement case with prompt reservation and denial of coverage, we today enter judgment declaring the insurer is estopped from denying coverage for costs of defense and indemnity for the 2017 legal malpractice case but is not obligated to defend or indemnify the insured attorney for the 2019 disgorgement case. The insured attorney may not proceed claiming the insurer's bad faith in the 2019 disgorgement case.  The underlying plaintiff suing the insured also cannot proceed in claiming rights to coverage under the attorney's insurance policy under the adduced facts.

I.       **Adduced facts.**[1]

New Jersey citizen Cindy Johnson believed medical professionals caused the untimely death of her husband after he entered the hospital in December 2008. She approached experienced Philadelphia malpractice lawyer Frank M. McClellan of the Frank McClellan Law Office, and asked him to represent her in a medical malpractice action she planned to bring in 2009 on behalf of the estate of her deceased husband.[2]   As Attorney McClellan did not have a license to practice law in New Jersey, he referred Ms. Johnson to New Jersey lawyer Thomas Ashley to represent her.[3]   Attorney Ashley then brought a medical malpractice action in the Superior Court of New Jersey for Middlesex County.[4]   Over time, Ms. Johnson grew unsatisfied with Attorney Ashley's service, so Attorney McClellan referred her to Theresa Blanco, a lawyer at an Allentown, Pennsylvania law firm who had a license to practice law in New Jersey.[5] During Attorney Blanco's representation, her law firm dissolved and the case needed to be transferred once again.[6]   Attorney McClellan referred the case to Aaron J. Freiwald and his law firm Layser & Freiwald, P.C.[7]   Attorney Freiwald obtained *pro hac vice* admission to the New Jersey Bar for purposes of representing Ms. Johnson.[8]   He then litigated and settled the malpractice action for $500,000 in 2014.[9]   Attorney Freiwald collected one-third of the settlement proceeds, totaling $156,436,25, as his contingency fee, and he distributed $52,145.52 from this amount to Attorney McClellan as a "referral fee."[10]

After the settlement, Ms. Johnson believed her various attorneys had not properly joined certain culpable defendants to her medical malpractice action, and she decided to file a legal malpractice action in New Jersey Superior Court, Essex County against Attorneys Ashley, Blanco, Freiwald, and McClellan among others (the "2017 Legal Malpractice Action").[11]   Her sparse three-paragraph complaint filed October 30, 2017 alleged the attorney defendants

"represented her in a wrongful death medical malpractice action", "were negligent in representing" her, and caused her harm.[12]  Ms. Johnson sought "damages, together with interest, cost of suit and such other and further relief that the Court deems equitable and just."[13]  She did not seek disgorgement.[14]  She did not specify damages.[15]

Today's issues concern whether a legal malpractice insurer must provide Attorney McClellan a defense and indemnity from judgment in either the 2017 Legal Malpractice Action or a March 2019 case filed by Ms. Johnson seeking disgorgement of the fee paid to Attorney McClellan

### Attorney McClellan's legal malpractice insurance

Insurer Westport Insurance Corporation agreed to defend and indemnify Attorney McClellan for defined losses arising out of legal malpractice claims.[16]  As material today, Westport and Attorney McClellan agreed to a Lawyers Professional Liability Policy (the "Policy") to address timely reported claims against him accruing during a policy period of November 9, 2012 to November 9, 2013.[17]

### The Policy

Under the Policy, Westport agreed to pay "all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD[.]"[18]  The parties defined the term "LOSS" as "the monetary and compensatory portion of any judgment, award or settlement."[19] The parties agreed "LOSS shall not include":

1.   civil or criminal fines, penalties, fees or sanctions;
2.   matters deemed uninsurable by operation of law;
3.   punitive or exemplary damages;
4.   the multiplied portion of any multiple damages;
5.   the return by any INSURED of any fees or remuneration paid to any INSURED; or

3

6. any form of non-monetary relief.[20]

Westport and Attorney McClellan agreed Attorney McClellan would report any claim within the policy period or within the sixty days following the policy period ending January 8, 2014.[21] Westport also provided several options for Attorney McClellan to extend the period for reporting claims beyond January 8, 2014.[22] Westport offered "Non-Practicing Reporting Period Options," which allowed different extended reporting options based on the insured's reason for terminating his practice of law (*i.e.* retirement, death, or disability) and the length of time the insured had maintained a policy with Westport.[23] The first Non-Practicing Reporting Period Option included an option for an insured who "during the POLICY PERIOD, retires or voluntarily ceases, permanently and totally the private practice of law" as long as: (1) the insured "has not had his or her professional license to practice law suspended or surrendered at the request of any disciplinary or regulatory authority"; (2) the insured "has been continuously insured by the Company for at least three full consecutive years"; (3) the Policy "was not cancelled for non-payment of premium or non-renewed"; (4) the insured "complied with all the terms and conditions of the POLICY"; and (5) the insured "gives written notification of retirement or the termination of the private practice of law within sixty (60) days after the termination date of the POLICY PERIOD."[24] This particular option "is provided until the INSURED resumes the private practice of law.[25]

Westport did not define what it means to "retire" or to "resume the private practice of law."[26]

### *Attorney McClellan retires from his practice.*

During the policy period in 2013, Attorney McClellan informed Westport of his retirement from the practice of law and asked Westport to issue him a "fee tail insurance policy"

by the end of the policy period, November 18, 2013.[27]   Westport issued Mr. McClellan an endorsement, which "change[d] the policy."[28]   Under the endorsement, Westport and Attorney McClellan agreed:  "[c]overage shall apply to CLAIMS arising out of any WRONGFUL ACT which took place prior to the end of the POLICY PERIOD and on or after the RETROACTIVE DATE, if any, are reported to the Company during the following Non-Practicing Extended Reporting Period(s):  From: 11/19/2013 To: Unlimited."[29]   The parties did not specify coverage or unlimited reporting period would end if Attorney McClellan resumed the practice of law.[30]

Two years later, Attorney McClellan decided to become Special Counsel at the Freiwald Firm.[31]   As Special Counsel, Attorney McClellan mainly supervised law students working in a health law practicum, supervised new lawyers hired to develop a new health law practice, evaluated potential cases and offered strategic assessments on identified cases.  .[32]

### Attorney McClellan notifies Westport of Ms. Johnson's claim

Attorney McClellan immediately emailed Westport to "provide notice of a claim against him" under his "tail policy," the Policy at issue today.[33]   He explained "he was the referring attorney in this medical malpractice case that was successfully litigated and settled by Aaron Freiwald, an attorney in Philadelphia, to whom I referred the case after I initially referred it to Thomas Ashley."[34]   Attorney McClellan did not disclose his receipt of a referral fee in this email to Westport.[35]   He closed by asking Westport to "advise [him] how to proceed in supplying the information you need to provide representation in this matter."[36]

Donna Asta, the Westport Claims Specialist assigned to Attorney McClellan's claim, replied a few weeks later.[37]   Claims Specialist Asta confirmed Attorney McClellan's Policy had "an Extended Reporting Period of November 13, 2013 to Unlimited."[38]   Claims Specialist Asta represented "[a]t this time, there are no apparent coverage issues" with the caveat Westport

would "continue to investigate …and review coverage upon receipt of new information."[39]  She assured him, "[i]f coverage issues do arise, we shall provide you with our position in writing."[40]  She also told Attorney McClellan she forwarded the matter to two attorneys to defend him McClellan in the legal malpractice claim.[41]

Following notice of the 2017 Legal Malpractice Action, Westport tendered a defense to Attorney McClellan.[42]  During the course of the representation, Claims Specialist Asta communicated with Attorney McClellan and Attorney Freiwald's counsel about Attorney McClellan's potential insurance coverage under Attorney Freiwald's policy.[43]  At one point, in May 2018, Claims Specialist Asta stated "Mr. Frank McClellan is employed by your client, Mr. Aaron Freiwald's firm."[44]  Despite Claims Specialist Asta's apparent knowledge of Attorney McClellan's employment at the Freiwald Firm, Westport did not voice a concern regarding Attorney McClellan's coverage including whether he resumed the practice of law under the Policy.  The parties actively litigated the 2017 Legal Malpractice Action until advising us of an undisclosed settlement this week.

### *Ms. Johnson demands disgorgement of the referral fee.*

Approximately ten months into the 2017 Legal Malpractice Action, Ms. Johnson's attorney sent Attorney McClellan's Westport-retained lawyer a letter demanding Attorney McClellan return the referral fee to her (rather than her New Jersey trial lawyer) claiming the referral fee violated the New Jersey Rules of Professional Conduct and New Jersey law.[45]

On October 10, 2018, Claims Specialist Asta created a status report addressing the referral fee and noting Westport would need to issue a reservation of rights regarding the referral fee.[46]  The report further states Claims Specialist Asta "advised [Attorney McClellan] of the coverage issues."[47] Westport now argues Claims Specialist Asta advised Attorney McClellan the

6

Policy would not cover the return of the referral fee over the phone on October 10, 2018.[48] Attorney McClellan denies this call.[49] Ms. Johnson moved for summary judgment in November 2018, asking, in part, for the New Jersey state court to order Attorney McClellan to disgorge the $52,145.42 referral fee.[50] A month later, Westport issued Attorney McClellan a letter purporting to reserve its rights against covering the disgorgement of the referral fee.[51] Attorney McClellan claims Westport did not mention a potential coverage issue until it issued a December 17, 2018 reservation of rights letter.[52] The New Jersey state court denied Ms. Johnson's summary judgment motion and directed her to refile a separate disgorgement action.[53]

### Ms. Johnson's 2019 Disgorgement Action

Consistent with the New Jersey judge's direction, Ms. Johnson filed a separate civil action in March 2019 asking the court to order Attorney McClellan to disgorge his referral fee (the "2019 Disgorgement Action").[54] Westport tendered a defense to Attorney McClellan in the 2019 Disgorgement Action but reserved its rights to deny coverage for damages falling outside the covered definition of "Loss" in April 2019.[55]

On January 3, 2020, the New Jersey state court entered judgment in the 2019 Disgorgement Action in favor of Ms. Johnson and ordered Attorney McClellan to disgorge the $52,145.41 referral fee and pay $156,436.23 in treble damages for violating New Jersey law governing the unauthorized practice of law.[56] A few weeks after the ruling, Westport sent a letter to Attorney McClellan saying it would not provide coverage for the January 3, 2020 judgment, stating the ordered damages (1) did not fall within the covered definition of "Loss" and did not constitute a "covered claim" and (2) for the first time, advising Attorney McClellan he had no coverage under the Policy because the Non-Practicing Extended Reporting Period option "is provided until [Attorney McClellan] resumes the private practice of law."[57]

7

## II.   Analysis

A little over two months later, Westport sued Attorney McClellan and Ms. Johnson asking us to enter a declaratory judgment confirming it does not need to tender coverage in either the 2017 Legal Malpractice Action or the 2019 Disgorgement Action.[58] Attorney McClellan and Ms. Johnson counterclaimed for estoppel/waiver and bad faith.[59]

Westport moved for judgment on the pleadings as to both its complaint and the counterclaims in June 2020[60] which we granted in part and denied in part.[61]   Applying Pennsylvania law,[62] we found we could not declare Westport's rights regarding the 2017 Legal Malpractice Action and the 2019 Disgorgement Action, but we dismissed Ms. Johnson's bad faith counterclaims and Attorney McClellan's bad faith counterclaim based on the 2017 Legal Malpractice Action.[63]   We allowed Attorney McClellan's bad faith counterclaim based on the 2019 Disgorgement Action to move forward.[64]   For the 2017 Legal Malpractice Action, we determined we could not enter judgment for Westport because we found the Policy "ambiguous as to whether, by practicing law, Attorney McClellan lost the ability to report claims."[65]   For the 2019 Disgorgement Action, we determined Attorney McClellan's estoppel defense prevented us from entering judgment on the pleadings because an unsettled question of fact existed as to "whether the December 2018 reservation [was] 'timely'" and "whether [Westport] should have advised its insured of the Policy exclusion earlier than December 2018."[66]

The parties now cross-move for summary judgment after discovery.[67]   Westport again argues the Policy does not cover indemnity for the disgorgement judgment, estoppel does not bar Westport from denying coverage for the 2019 Disgorgement Action or the 2017 Legal Malpractice Action, and Attorney McClellan's coverage terminated either when the policy period expired or when he started working as Special Counsel at the Freiwald Firm.   Attorney

McClellan and Ms. Johnson separately move for summary judgment arguing estoppel bars Westport from denying coverage for both the 2019 Disgorgement Action and the 2017 Legal Malpractice Action.

> **A.    We deny Westport's motion and grant Attorney McClellan's motion for declaratory judgment as to the 2017 Legal Malpractice Action.**

Westport offers two arguments as to why we should declare its right to not tender a defense or indemnity as to the 2017 Legal Malpractice Action:  (1) Attorney McClellan never qualified for any extended reporting period option because he never actually "retire[d]" from the practice of law; and (2) even if Attorney McClellan did qualify for an extended reporting period option, his coverage under the option terminated when he resumed the private practice of law.[68] Attorney McClellan argues the doctrine of estoppel prevents Westport, who rendered him a defense in the malpractice action for years without issuing a reservation of rights, from denying coverage.[69]  Westport responds by arguing Attorney McClellan lacked coverage and estoppel cannot create coverage where none exists.[70]  We held in our July 31, 2020 Memorandum and Order on Westport's motion for judgment on the pleadings: "Westport fail[ed] to convince us why the doctrine of estoppel could not apply to it denying coverage under the [Non-Practicing Extended Reporting Period Option] provision."[71]   In support of our conclusion, we cited Westport's undisputed conduct following Ms. Johnson's complaint in the 2017 Legal Malpractice Action, and we explained we did not find persuasive Westport's argument about how estoppel cannot create coverage where none exists.[72]  Westport has neither adduced facts nor cited law sufficient to change our analysis.

The doctrine of estoppel prevents Westport from denying coverage in the 2017 Legal Malpractice Action.  To estop Westport from now denying defense or coverage, Attorney McClellan must show Westport induced him to believe certain facts, which he relied on to his

detriment.[73]  To determine whether Attorney McClellan detrimentally relied on Westport's conduct, we must assess whether he suffered actual prejudice.[74]  Actual prejudice occurs when an insurer assumes the insured's defense without timely issuing a reservation of rights letter asserting all possible bases for a potential denial of coverage.[75]  When an insurer receives notice of a claim, it has a duty "immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy."[76]  "[The insurer] cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, taking advantage of a defect in the policy."[77]  "The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case."[78]

Two well-reasoned opinions in *Beckwith* and *Selective Way* persuade us to find estoppel applies to the undisputed facts in the 2017 Legal Malpractice Action.  In *Beckwith*, an insurer provided a defense to the insured after issuing a reservation of rights limited strictly to potential claims for punitive damages and not mentioning any other reason to possibly decline coverage.[79]  After defending the insured for thirteen months, the insurer sought to withdraw from the case, citing a policy exclusion for compensatory damages tied to certain forms of property damage.[80]  Judge Cohill, ruling on a motion for summary judgment, held the insurer's conduct estopped it from withdrawing from the defense and refusing to indemnify the insured.[81]  He explained the insured relied on the insurer's coverage of the claim for thirteen months.[82]  The insurer "had virtual carte blanche over the defense of the . . . case for a period of over two years, and [the insured] justifiably relied on [the insurer] for indemnification of all claims except the claim for punitive damages."[83]  Judge Cohill continued, "[b]ecause of its reliance on [insurer] to defend the compensatory damages claims, [the insured] was deprived of the opportunity to itself investigate and defend the . . . claims."[84]  As the insured suffered actual prejudice from the

insurer's decision to defend the claim for thirteen months without issuing a reservation of rights, Judge Cohill estopped the insurer from denying coverage.[85]

Thirty-four years later in *Selective Way*, the Pennsylvania Superior Court recently confirmed the soundness of Judge Cohill's reasoning. An insurer sold a snow and ice removal company a liability policy containing an exclusion for harm related to snow and ice removal.[86] The insured faced damages stemming from negligent snow and ice removal, and the insurer rendered a defense under a vague reservation of rights letter, which did not mention the snow and ice removal exclusion.[87]   After defending the insured for eighteen months, the insurer sought a judgment declaring it did not owe the insured a defense or indemnity.[88]  The insured argued the doctrine of estoppel prevented the insurer from denying coverage.[89]  The Pennsylvania Superior Court agreed.[90]  Discussing the Pennsylvania Supreme Court's decision in *Malley v. American Indemnity Corp.*, the Superior Court explained "an insurance company [is] estopped from challenging coverage after it ha[s] mounted a full defense of its insured without undertaking an appropriate investigation beforehand."[91]   The court reasoned "the snow and ice removal exclusion was evident on the face of the Policy" and "[d]espite such knowledge, [the insurer] waited eighteen months to raise the policy exclusion, and provided no further intervening notice . . . that it would have to mount of defense . . . on its own."[92]

As in *Beckwith* and *Selective Way*, Westport has been defending Attorney McClellan in the Legal Malpractice Action for more than a year.[93]  By May 23, 2018 at the latest, Claims Specialist Asta knew Attorney McClellan worked in some capacity at the Freiwald Firm.[94] Rather than inform Attorney McClellan of this possible defense to coverage by issuing a reservation of rights, Westport continued representing Attorney McClellan for twenty months without informing him of their position.[95]  Like the insurers in *Selective Way* and *Beckwith*, by

failing to inform Attorney McClellan of its position while simultaneously exercising control over his defense, Westport prejudiced Attorney McClellan by depriving him of the ability to investigate and defend against the claims on his own.

Westport attempts to get around the principles articulated in *Breckwith* and *Selective Way* by arguing estoppel cannot create coverage where none exists. They argue while estoppel can prevent an insurer from denying coverage based on a policy *exclusion*, estoppel cannot create coverage where none exists.[96] Westport argues Attorney McClellan lacked coverage because he never retired from the practice of law or, alternatively, did retire and resumed practicing law shortly thereafter.[97] We do not find this argument persuasive.

While Westport correctly acknowledges estoppel cannot create coverage where none exists under Pennsylvania law, Attorney McClellan does not seek to "create coverage" through estoppel. Attorney McClellan purchased an insurance policy from Westport to protect himself from liability for professional malpractice. A professional malpractice claim arose while Attorney McClellan had some referral relationship with counsel representing Ms. Johnson in a medical malpractice action from 2009 to 2014, a time span stretching both before and beyond the policy period. Westport does not argue the type of claim asserted falls outside the Policy. Rather, Westport argues Attorney McClellan did not timely report the claim because he did not report the claim during the policy period, and he did not qualify for an extended reporting period. While Westport tries to cabin the doctrine of estoppel to situations where an insurer seeks to invoke a policy exclusion, courts describing the insurer's duty to reserve its rights make clear an insurer must raise "any possible defense on the policy" or the "various factors which cast doubt on coverage", not just defenses arising from a policy exclusion.[98] We view the failure to timely report the claim as the type of "coverage defense" Westport would need to assert in a reservation

of rights letter to prevent estoppel.

The cases Westport cites do not undermine our reasoning.  In *Pizzini*, an investor invested in several oil-drilling ventures under the advisement of an agent.[99]  After the investments failed, the investor sued the agent for material misrepresentations.[100]  The agent had a professional liability policy, and his insurer took over the defense, subject to a reservation of rights and under the condition the agent must cooperate with the counsel provided.[101]  When the agent continuously refused to cooperate with counsel, culminating in his negotiating a settlement without notifying counsel, the insurer refused to indemnify the agent.[102]  The investor sued the insurance company for indemnity and bad faith, arguing estoppel prevented the insurer from denying coverage.[103]  Our Court of Appeals held estoppel did not apply.  The court explained "as to estoppel, the appellants would have to demonstrate 'actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act his detriment in reliance thereon' in order to prevail."[104]  The court continued "given [Insurer's] letter unequivocally communicated its intention to reserve its rights, we agree with the district court that no reasonable juror would conclude [Agent or plaintiffs] suffered actual prejudice."[105]  While the court mentioned the principle "estoppel cannot create coverage where none exists," the holding hinged on the lack of actual prejudice given the reservation of rights.[106]

In *Wasilko*, a driver's insurance policy did not extend to "any automobile owned by the insured."[107]  While driving a car he owned, the driver struck two other cars.[108]  The insurer paid the first victim."[109]  While investigating the second victim's claims, the insurer realized the driver owned the car involved in the accident and refused to pay the second victim's claims.[110]  The second victim argued estoppel prevented the insurer from denying coverage for its claim.[111]  The Pennsylvania Superior Court disagreed with the second victim on two grounds.  First, the

court noted "the Vehicle Code establish[es] two distinct types of motor vehicle liability coverage" and estoppel cannot convert a non-vehicle owned policy to an owned-vehicle policy.[112]   Second, "nothing in the instant case indicates prior knowledge on the part of the insurance company or that [the second victim] relied to on the company's conduct."[113]   "The company's adjustment of [the first victim's] claim was certainly [the first victim's] good fortune, but none of the other parties were prejudiced thereby."[114]   "The exercise of generosity does not create a binding obligation for its continuance."[115]

Similarly in *Keystone*, the insured sold coal to a manufacturer.[116]   Defects in the coal damaged the manufacturer and the manufacturer's customers.[117]   The insured sought coverage under a general liability policy, and the insurer settled the claim under a reservation of rights.[118] Soon thereafter, a second manufacturer came forward with a similar claim, but this time, the insurer denied coverage.[119]   The insured sued arguing the insurer is estopped from denying coverage.[120]   Like in *Wasilko*, Judge McClure disagreed on the grounds:  (1) the insured could not show it detrimentally relied on the coverage of an earlier, entirely separate claims; and (2) the policy did not cover the claim at issue, and estoppel cannot create coverage where none exists.[121]

Mr. McClellan's claim is unlike *Pizzini*, *Wasliko*, and *Keystone*.  Unlike in *Pizzini*, where the insurer timely issued a reservation of rights at the outset of the litigation, Westport did not issue a reservation of rights until it had defended Attorney McClellan for three years.  Unlike in *Wasilko* and *Keystone*, Attorney McClellan does not seek to use Westport's conduct in an entirely unrelated case to estop it from denying coverage in the 2017 Legal Malpractice Action. He seeks to estop it from pulling out of his defense of the 2017 Legal Malpractice Action after they spent years litigating this exact action without a reservation of rights.

As Westport defended Attorney McClellan in the 2017 Legal Malpractice Action without reserving its rights to the defense regarding the timeliness of his claim, estoppel bars Westport from denying coverage in the 2017 Legal Malpractice Action.[122]

**B.      We grant Westport's motion and deny Attorney McClellan's motion for declaratory judgment seeking coverage in the 2019 Disgorgement Action.**

The 2019 Disgorgement Action is a different story.  As discussed above, an insurer has a duty to investigate all circumstances bearing on coverage and reserve its rights in a timely manner.  An insurer who fails to do so could face estoppel if it discovers a defense to coverage it should have discovered at the outset.   But an insured cannot establish estoppel by merely showing an insurer should have discovered a defense to coverage and reserved its rights at an earlier date.  The insured must also show he suffered "actual prejudice" from the insurer's failure to timely discover and reserve its rights to assert a potential defense.  As Mr. McClellan has not established actual prejudice, his estoppel argument fails.

Before Ms. Johnson filed the 2019 Disgorgement Action, Westport issued a reservation of rights informing Attorney McClellan his coverage did not extend to the "return of fees."[123] Once she filed the 2019 Disgorgement Action, Westport issued another reservation of rights again explaining the policy did not cover the return/disgorgement of fees or treble damages.[124] Attorney McClellan attacks the timeliness of Westport's reservation, arguing Westport should have known Ms. Johnson might seek the disgorgement of fees when Ms. Johnson filed the 2017 Legal Malpractice Action because under New Jersey law a court may order the disgorgement of fees in a negligence action.[125]   Attorney McClellan argues Westport should have reserved its rights **as** early as 2017.

This argument fails.  Assuming *arguendo* Westport should have known Ms. Johnson might seek and obtain disgorgement of fees based on a three-paragraph negligence complaint

against several lawyers, Attorney McClellan does not adduce facts showing he suffered "actual prejudice."   Attorney McClellan received notice of Westport's position with respect to disgorgement before Ms. Johnson filed the 2019 Disgorgement Action.[126]  Having received this notice, Attorney McClellan could have hired separate counsel to represent him in the 2019 Disgorgement Action.  He adduces no facts showing Westport's representation in the 2017 Legal Malpractice Action prejudiced him in the 2019 Disgorgement Action.  He has not established the type of "actual prejudice" discussed in *Selective Way* and *Beckwith* necessary for us to estop Westport from denying coverage in the 2019 Disgorgement Action.  The 2019 Disgorgement Action bears greater similarity to *Keystone* and *Wasilko*.   Like in *Keystone* and *Wasilko*, Attorney McClellan attempts to point to an earlier and entirely separate action—the 2017 Legal Malpractice Action—to estop Westport from denying coverage in the 2019 Disgorgement Action without adducing any facts as to how Westport's representation in the 2017 Legal Malpractice Action prejudiced him in the 2019 Disgorgement Action.  As Attorney McClellan cannot show "actual prejudice," he cannot estop Westport from denying coverage.

We similarly find no basis to proceed on Attorney McClellan's bad faith claim arising from Westport's conduct in addressing the 2019 Disgorgement Action. Pennsylvania common law does not provide a remedy 'for bad faith on the part of insurers.[127]  "Instead, '[t]here are two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371.'"[128] Attorney McClellan does not cite the Pennsylvania bad faith statute in his counterclaim, and thus we construe his claim as a contract claim for breach of the implied contractual duty to act in good faith.  An insurer violates its implied contractual duty to act in good faith when it gives a "frivolous" or "unfounded" excuse

not to pay insurance proceeds.[129]  As we find Westport has no duty to defend or indemnify Attorney McClellan, we cannot find its decision not to do so "unfounded" or "frivolous."  We find no basis to proceed on Attorney McClellan's bad faith counterclaim with respect to the 2019 Disgorgement Action.

C.  **We deny Ms. Johnson's motion for summary judgment and grant Westport's motion as to Ms. Johnson's estoppel counterclaim.**

While Ms. Johnson has standing to defend herself in this action, she cannot assert an estoppel counterclaim against Westport.  Our Court of Appeals has twice held an injured third party has standing to defend itself when an insurer brings a declaratory judgment action against the injured third party.[130]  In *Rauscher*, an insured motorist injured a third party in a car accident.[131]  The insurer brought a declaratory judgment action, naming both the insured and the injured third party as defendants and asking the court to determine whether it had an obligation to defend and indemnify the insured motorist in the underlying personal injury suit.[132]  When the insured did not answer the declaratory judgment complaint, the court entered default judgment against the insured and a judgment against the injured parties.[133]  Our Court of Appeals reversed the judgment against the injured third parties explaining the "insurance company in this case initiated the action and brought the [injured third party] into federal court."[134]  Our Court of Appeals reasoned, "it would be anomalous to hold that the [injured third party] should not be given an opportunity to establish their case against [the insurance company] because of a default which they could not prevent."[135]

Nearly three decades later in *Murray*, an insurance company named an injured third party as a defendant in the insurance company's declaratory judgment action.[136]  Citing *Rauscher*, our Court of Appeals recognized, "a 'case or controversy' must exist between the insurance company and the injured third party under such circumstances, since the insurance company brought the

declaratory judgment against the injured third party in the hope of attaining a binding judgment against both the insured and the injured party."[137]   Like the insurers in *Murray* and *Rauscher*, Westport has brought a declaratory judgment action against an injured third party, Ms. Johnson. Under this precedent, she has standing to defend herself.

But Ms. Johnson's standing to defend herself does not give her the ability to assert an estoppel counterclaim.  Under Pennsylvania law, estoppel "can operate neither in favor of nor against strangers."[138]  Ms. Johnson is a stranger to the Policy.  She is not a party to the Policy, and the parties adduced no facts demonstrating she received an assignment or other transfer of rights under the Policy.  As Ms. Johnson has "no contractual relations whatever with the insurance company, [s]he cannot invoke any estoppel against it."[139]  We grant Westport's motion on Ms. Johnson's estoppel counterclaim.

## III.    Conclusion

We grant Attorney McClellan's motion for summary judgment with respect to the 2017 Legal Malpractice Action, but we deny his motion for summary judgment with respect to the 2019 Disgorgement Action.   We grant Westport's motion for summary judgment on Ms. Johnson's estoppel defense and its motion for summary judgment with respect to the 2019 Disgorgement Action. We find no basis for a bad faith counterclaim against Westport arising from its handling of the 2019 Disgorgement Action.   We enter declaratory judgment today consistent with these findings.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. The parties prepared a Joint Appendix in support of their cross-motions for summary judgment.  (ECF Doc. No. 57-1.)   References to the Joint Appendix are by ECF document number and the corresponding Bates number, for example, "1a."  Westport, Attorney McClellan and Ms. Johnson each filed a SUMF.  ("Johnson SUMF", ECF Doc No. 56; "Westport SUMF", ECF Doc. No. 60; "McClellan SUMF", ECF Doc. No. 58-1.)  Westport responded to Attorney McClellan's SUMF ("Westport Response to McClellan SUMF", ECF Doc. No. 70) and Ms. Johnson's SUMF ("Westport Response to Johnson SUMF,

ECF Doc. No. 66), and Attorney McClellan responded to Westport's and Ms. Johnson's SUMF. ("McClellan Response to Westport & Johnson SUMF", ECF Doc. No. 68.)   Ms. Johnson responded to Westport's SUMF, but did not respond to Attorney McClellan's SUMF. ("Johnson Response to Westport's SUMF", ECF Doc. No. 64.)

[2] ECF Doc. No. 57-1 at 55a-56a.

[3] *Id.*

[4] *Id.* at 56a; *Johnson v. Dr. Eric Handler*, No. L-9702-09 (N.J. Super. Ct. Law Div. Mid. Cty.).

[5] *Id.*

[6] *Id.*

[7] Freiwald & Layser, P.C. is a predecessor to the Freiwald Firm. (ECF Doc. No. 57-1 at 50a.)

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*; *see also id.* at 27a; *Johnson v. Ashley*, No. ESX-L-71-17 (N.J. Super Ct. Law Div. Esx. Cty.).

[12] *Id.* at 27a-29a.

[13] *Id.* at 28a.

[14] *Id.*

[15] *Id.*

[16] ECF Doc. No. 57-1 at 1a-26a, 77a. Westport also insured Attorney McClellan's individual law firm, the Law Office of Frank M. McClellan. *Id.*

[17] *Id.* at 1a-26a.

[18] *Id.* at 6a.

[19] *Id.* at 9a.

[20] *Id.*

[21] *Id.* at 6a.

[22] *Id.* at 16a-17a.

[23] *Id.* at 17a.

[24] *Id.*

[25] *Id.*

[26] *See generally id.* at 1a-26a.

[27] ECF Doc. No. 57-2 at 776a. The parties do not advise whether Attorney McClellan closed his firm.

[28] *Id.*

[29] *Id.*

[30] *See id.*

[31] The Freiwald Firm is a successor to Freiwald & Layser, P.C.  (ECF Doc. No. 57-1 at 50a.)

[32]  ECF Doc. No. 57-1 at 138a.  The parties also did not offer evidence as to the nature of Attorney McClellan's work, such as hours, expectations, compensation, or management input.

[33] ECF Doc. No. 57-4 at 351a.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] ECF Doc. No. 57-4 at 364a.

[38] *Id.*

[39] *Id.* at 365a.

[40] *Id.*

[41] *Id.* The parties did not advise as to allegations in the legal malpractice action other than the original three-paragraph complaint.  They also did not describe the work effort in discovery or the present status of this case.

[42] *Id.*

[43] ECF Doc. No. 77-4 at 366a-368a.

[44] *Id.* at 368a.

[45] ECF Doc No. 57-2 at 861a.

[46] ECF Doc. No. 57-1 at 31a.

[47] *Id.*

[48] *Id.*

[49] McClellan SUMF ¶¶ 32-33.  As shown, this disputed issue of fact does not alter our analysis.

[50] McClellan SUMF ¶ 36; Westport Response to McClellan SUMF ¶ 36.

[51] ECF Doc. No. 57-2 at 863a.

[52] McClellan SUMF ¶¶ 32-33.

[53] McClellan SUMF ¶¶35-36; Westport Response to McClellan SUMF ¶¶ 35-36.

[54] *Id.*; *Johnson v. McClellan*, No. MID-L-2366-19 (N.J. Super. Ct. Mid. Cty.).

[55] ECF Doc. No. 57-2 at 867a.

[56] ECF Doc. No. 57-1 at 74a; *Johnson*, No. MID-L-2366-19, 2020 WL 3054304, at *1 (N.J. Super. Ct. Mid. Cty. Jan. 3, 2020).  The parties earlier advised of ongoing appeal efforts in the 2019 Disgorgement Action but have not updated the status.

[57] ECF Doc. No 57-4 at 378a-381a.

[58] ECF Doc. No. 1.

[59] ECF Doc. Nos. 21, 22.

[60] ECF Doc. No. 38.

[61] ECF Doc. No. 50.

[62] In our Memorandum, we concluded Pennsylvania has a stronger interest in issues involving the Policy because: (1) Westport issued this Policy to a Pennsylvania resident licensed to practice law in Pennsylvania; (2) the parties understood the insurance policy to apply to Attorney McClellan's practice of law in Pennsylvania; (3) Attorney McClellan's relationship with Ms. Johnson was first established in Pennsylvania; and (4) the parties sought to interpret the rights and obligations created by a Pennsylvania contract.  ECF Doc. No. 50 at 5 n.26.

[63] *Id.* at 4-12.

[64] *Id.*  As we today find Westport did not breach an obligation to defend or indemnify Attorney McClellan in the 2019 Disgorgement Action, we also find Westport did not engage in bad faith in addressing Attorney McClellan's claim in the 2019 Disgorgement Action.

---

[65] *Id.* at 6.

[66] *Id.*

[67] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[68] *See* ECF Doc. No. 61 at 15-22.

[69] ECF Doc. No. 58-2 at 9-17; ECF Doc. No. 67 at 2-6.

[70] ECF Doc. No. 61 at 21; ECF Doc. No. 69 at 8-10.

[71] ECF Doc. No. 50 at 6.

[72] *Id.*

[73] *Merch. Mut. Ins. Co. v. Artis*, 907 F. Supp. 886, 891 (E.D. Pa. 1995).

[74] *Id.*

[75] *Id.* at 892.

[76] *Malley v. Am. Indemnity Corp.*, 146 A. 571, 573 (Pa. 1929).

[77] *Id.*

[78] *Id.*

[79] *Beckwith Mach. Co. v. Travelers Indem. Co.*, 638 F. Supp. 1179, 1181 (W.D. Pa. 1986).

[80] *Id.*

[81] *Id.* at 1187.

[82] *Id.*  In *Beckwith*, the insured sold, leased, and repaired Caterpillar earth moving equipment. The insured purchased a policy under which Travelers agreed to pay "for damages because of bodily injury, personal injury or property damages to which the policy applied."  *Id.* at 1180.  A customer sued the insured alleging it sold defective equipment causing the customer substantial damages.  After assuming the insured's defense for thirteen months, the insurer abruptly sought to withdraw from the case citing, among other things, a provision excluding coverage "to loss of use of tangible property . . . resulting from the failure of the named insured's products . . ."  *Id.* at 1184.

[83] *Id.* at 1188.

[84] *Id.*

[85] *Id.*

[86] *Selective Way Ins. Co. v. MAK Servs., Inc.*, 232 A.3d 762, 764 (Pa. Super. Ct. 2020).

[87] *Id.*

[88] *Id.* at 756-766.

[89] *Id.* at 766.

[90] *Id.* at 772.

[91] *Id.* at 769 (citing *Malley*, 146 A. at 573.

[92] *Id.* at 771.

[93] ECF Doc. No. 57-4 at 364a-365a.

[94] *Id.* at 368a.

[95] *Id.* at 381a.

[96] ECF Doc. No. 69 at 8-10.

[97] ECF Doc. No. 61 at 15-22.

[98] *Malley*, 146 A. at 573; *Draft Sys., Inc. v. Alspach*, 756 F.2d 293, 296 (3d Cir. 1985).

[99] *Pizzini v. Am. Int'l Spec. Lines Ins. Co.*, 107 Fed. App'x 266, 267 (3d Cir. 2004).

[100] *Id.*

[101] *Id.*

---

[102] *Id.*

[103] *Id.* at 268.

[104] *Id.* (citing *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992).

[105] *Id.*

[106] *Id.*

[107] *Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 61 n.2 (Pa. Super. Ct. 1967).

[108] *Id.* at 61.

[109] *Id.* at 62-63.

[110] *Id.*

[111] *Id.*

[112] *Id.* at 63 n.4.

[113] *Id.* at 63.

[114] *Id.*

[115] *Id.* (quoting *Myers v. Metro. Life. Ins. Co.*, 33 A.2d 253 (Pa. 1943).

[116] *Keystone Filler & Mfg. Co., Inc. v. Am. Mining Ins. Co.*, 179 F. Supp. 2d 432, 436 (M.D. Pa. 2002).

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Id.* at 443.

[121] *Id.*

[122] The parties dispute whether Attorney McClellan "retired" and/or "resumed the practice of law" under the terms of the Policy. This dispute is immaterial. Regardless of whether Attorney McClellan "retired" or "resumed the practice of law" thereby disqualifying him from an extended reporting option, Westport had a duty to assert this defense in a reservation of rights at the outset of the 2017 Legal Malpractice Action.

[123] ECF Doc. No. 57-4 at 370a.

[124] *Id.* at 375a.

[125] ECF Doc. No. 67 at 3-4.

[126] ECF Doc. No. 57-4 at 370a.   The parties dispute whether Claims Specialist Asta notified Attorney McClellan of Westport's position for the first time in October 2018 or December 2018. This dispute is immaterial.   Even if Westport waited until December 2018, Attorney McClellan has notice of Westport's position before Ms. Johnson filed the 2019 Disgorgement Action. Attorney McClellan thus had the option to investigate and defend the 2019 Disgorgement Action in the manner he saw fit without ceding control to Westport.

[127] We again apply Pennsylvania law.   *Canfield v. Amica Mut. Ins. Co., Defendant.*, No. 20-2794, 2020 WL 5878261, at *3 (E.D. Pa. Oct. 2, 2020) (quoting (*Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

[128]  *Id.*

[129]   *Berg v. Nationwide Mut. Ins. Co., Inc.,* No. 33 MAP 2019, 2020 WL 5014927, at *1 (Pa. Aug. 25, 2020).

[130]  *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311 (3d Cir. 2011); *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986); *State Farm Fire and Cas. Co. v. Worontzoff*, No. 20-839, 2020 WL 4530704, at *1 (E.D. Pa. Aug. 6, 2020); *Carasquillo v. Kelly*, No. 17-4887, 2018 WL 1806871, at *2 (E.D.Pa. Apr. 17, 2018).

[131] *Rauscher*, 807 F.2d at 345.

[132] *Id.* at 347-48.

[133] *Id.* at 348-49.

[134] *Id.* at 355.

[135] *Id.*

[136] 658 F.3d at 320, n. 5.

[137] *Id.*

[138] *Antone v. New Amsterdam Cas. Co.*, 6 A.2d 566, 569 (Pa. 1939) (citing 10 R.L.C. p. 840).

[139] *Id.*